J-A16018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  Z.R., A MINOR | :  IN THE SUPERIOR COURT |
| | :       OF PENNSYLVANIA |
| | : |
| APPEAL OF:  A.R. | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | :       No. 47 MDA 2020 |

Appeal from the Decree Entered December 10, 2019
In the Court of Common Pleas of Columbia County
Orphans' Court at No:  2019-OC-225-RT

| | |
|---|---|
| IN RE: Z.R., A MINOR | :  IN THE SUPERIOR COURT |
| | :       OF PENNSYLVANIA |
| | : |
| APPEAL OF: A.R., MOTHER | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | :       No. 48 MDA 2020 |

Appeal from the Decree Entered December 10, 2019
In the Court of Common Pleas of Columbia County
Orphans' Court at No:  226 OC 2019 RT

| | |
|---|---|
| IN RE:  Z.R., A MINOR | :  IN THE SUPERIOR COURT |
| | :       OF PENNSYLVANIA |
| | : |
| APPEAL OF:  A.R. | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | :       No. 49 MDA 2020 |

Appeal from the Decree Entered December 10, 2019
In the Court of Common Pleas of Columbia County
Orphans' Court at No:  2019-OC-227-RT

J-A16018-20

BEFORE: PANELLA, P.J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 05, 2020**

A.R. ("Mother"), appeals from the decrees entered on December 10, 2019, which terminated involuntarily her parental rights to her children, Z.R. 1, a male born in October 2014; Z.R. 2, a female born in June 2016; and Z.R. 3, a male born in August 2017 (collectively, "the Children").[1]  After careful review, we affirm in part, vacate in part, and remand for further proceedings consistent with this memorandum.

The record reveals that Columbia County Children and Youth Services ("CYS") became involved with Mother, Father, and Z.R. 1 in December 2014. According to the family's Service Plan, CYS received reports that Father and Mother were living in poor home conditions, and that there were issues with their parenting of Z.R. 1.  Exhibit CYS-1 (3/2/15 Service Plan for Z.R. 1) at B-1.  It appears that CYS did not file a dependency petition at that time and Z.R. 1 remained in the home.  Subsequently, in February 2018, CYS implemented a safety plan with the family, due to Mother's alleged substance abuse and erratic behaviors.  Exhibit CYS-2 (4/30/18 Permanency Plan for Z.R. 3) at A-1.  CYS filed dependency petitions in March 2018, alleging that both Mother and Father were engaging in substance abuse.  *Id.*  On April 9, 2018, CYS received a report that Father overdosed in the family's home.  *Id.*  Father

_____

[1] The decrees also terminated involuntarily the parental rights of the Children's father, A.R., Sr. ("Father").  Father appealed the termination of his rights at Superior Court docket numbers 40, 41, and 42 MDA 2020.  We address his appeal in a separate memorandum.

- 2 -

claimed that it was not he but one of Mother's relatives who had overdosed. *Id.* However, when CYS conducted a drug screen of Father, he tested positive for both amphetamines and methamphetamines. *Id.* at A-2. CYS requested and received emergency protective custody of the Children that same day. *Id.* The juvenile court conducted a shelter care hearing on April 13, 2018, and adjudicated the Children dependent on April 27, 2018. *Id.* at E-1.

As detailed below, Mother failed to address her substance abuse history and lacked stable housing throughout the Children's dependency. She was also incarcerated twice, from September 2018 until November 2018, and from February 2019 to November 2019. On October 1, 2019, CYS filed petitions to terminate Mother's parental rights involuntarily. The orphans' court held a hearing on December 9, 2019, at the conclusion of which it announced that it would terminate Mother's rights. The court entered decrees memorializing its decision the following day. Mother timely filed notices of appeal on January 6, 2020, along with concise statements of errors complained of on appeal.

Mother now raises the following claims for our review:

A. Did the [orphans'] court commit an error of law and/or abuse[] its discretion when it determined that the burden of clear and convincing evidence was met in terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.[A.] § 2511 et[] seq.?

B. Did the [orphans'] court commit an error of law and/or abuse[] its discretion when it determined that the conditions that [led] to the removal or placement of the [C]hildren would not be remedied (23 Pa.C.S.[A.] § 2511(a)(2)), when Mother utilized all available resources to her while incarcerated from February 2019 until November 2019. Further, upon release, Mother continued to

complete all requirements and cooperate with [CYS] to satisfy any outstanding objectives?

C. Did the [orphans'] court commit an error of law and/or abuse[] its discretion when it determined that the conditions that [led] to the removal or placement of the [C]hild[ren] would not be remedied (23 Pa.C.S.[A.] § 2511(a)(5)), when Mother utilized all available resources to her while incarcerated from February 2019 until November 2019. Further, upon release, Mother utilized all additional resources available to her to complete any remaining objectives?

D. Did the [orphans'] court commit an error of law and/or abuse[] its discretion in determining that the conditions that led to removal continue to exist and the best interests of the [] [C]hildren would be best served in terminating the rights of Mother pursuant to Pa.C.S.[A.] 2511(a)(8)?

E. Did the [orphans'] court commit an error of law, abuse[] its discretion, and/or den[y] Mother's right to due process when it determined Mother's pending criminal charges, not yet heard in the Court of Common Pleas, was an appropriate factor to satisfy the factors under 23 Pa.C.S.[A.] § 2511(a) et[] seq.?

Mother's Brief at 5-6 (suggested answers omitted).

Mother's claims are interrelated, so we will address them together. Our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

- 4 -

Section 2511 of the Adoption Act governs involuntary termination of parental rights.  *See* 23 Pa.C.S.A. § 2511.  It requires a bifurcated analysis:

. . . . Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.  One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the instant matter, the orphans' court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b).  We need only agree with the court as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm.  *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).  Here, we analyze the court's decision to terminate pursuant to Section 2511(a)(2) and (b), which provides as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-

- 5 -

> being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.
>
> ***

23 Pa.C.S.A. § 2511(a)(2), (b).

We first consider whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2). Our analysis is as follows:

> . . . . In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental

duties." ***In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted). Importantly, "a parent's incarceration is relevant to the [S]ection [2511](a)(2) analysis and, depending on the circumstances of the case, it may be dispositive of a parent's ability to provide the 'essential parental care, control or subsistence' that the section contemplates." ***In re A.D.***, 93 A.3d 888, 897 (Pa. Super. 2014) (citation omitted).

Mother contends on appeal that CYS failed to present sufficient evidence in support of its petition to terminate her parental rights involuntarily. Mother asserts that she spent the majority of the Children's dependency incarcerated, but that she used the resources available to her while incarcerated to complete parenting classes, obtain a mental health evaluation, receive counseling, and maintain a relationship with the Children. Mother's Brief at 12-13, 19-26, 34-35. She also maintains that she sought out employment, obtained housing, attended substance abuse treatment, and tested negative for illegal drugs upon her release. ***Id.*** at 12-13, 21-22, 26, 34-35. According to Mother, CYS focused its evidence on her instability prior to incarceration, but did not know or bother to find out whether she made progress after her release. ***Id.*** at 19-23, 26-27, 29-30. In addition, Mother argues that the orphans' court relied improperly on her pending criminal charges when deciding to terminate her parental rights. ***Id.*** at 14, 36-37. Absent a determination of guilt, she insists that this was a violation of her right to due process. ***Id.***

The orphans' court explained its decision to terminate Mother's parental rights pursuant to Section 2511(a) as follows:

> This is the type of case that is sadly becoming more and more common. It involves parents in the throes of addiction who are trying to become stable and clean from drugs and be re-established in the community. Mother and Father both appear to be decent people. Without the scourge of drugs, they would have been fine parents. Both of these parents have made efforts to comply with the Family Service Plan and to be in a position to support, nurture, and provide proper security for these children. However, their efforts have been wholly inadequate.
>
> Mother has just recently been released from jail, again. Although she appears sincere in her efforts to support these children, her efforts are mostly directed at keeping in contact with the [C]hildren through regular visits. Her status is more of an older sister or relative who likes the [C]hildren but does not or cannot provide support and nurture of the most basic kind.
>
> She has been using drugs since she was 12, except for a few years.[2] There is no realistic expectation that she will in the foreseeable future be able to provide the parenting and housing and security that these children need.

Orphans' Court Opinion, 2/25/20, at 8-9.

Our review of the certified record supports the decision of the orphans' court. Most significantly, CYS caseworker Brittany Hacker testified regarding Mother's failure to address her history of substance abuse. Mother reported that she attended a substance abuse treatment intake appointment in July 2018. N.T., 12/9/19, at 19. She then entered a rehabilitation program in August 2018. *Id.* at 25-26. However, Mother failed to complete the program

---

[2] Mother testified that she began abusing substances when she "was like 12-years-old. [*sic*] And then I met [Father] at 13 and I got clean and I was clean all the way up until I was 18 -- well, 20." N.T., 12/9/19, at 134.

and left against medical advice in September 2018. *Id.* at 26. She received a referral for intensive outpatient treatment that same month but Ms. Hacker did not know if she actually attended. *Id.* at 27. Mother was subsequently incarcerated from late September 2018 until November 2018.[3] *Id.* at 31. In January 2019, Mother indicated that she had scheduled an appointment for medication-assisted treatment. *Id.* at 28. Once again, Ms. Hacker did not know if she actually attended. *Id.* Mother was then incarcerated for a second time in February 2019. *Id.* Reportedly, she had been on bail and probation prior to her incarceration. *Id.* at 29. She violated her probation by producing a positive drug screen, which caused her bail to be revoked. *Id.* Mother contacted Ms. Hacker in November 2019 and informed her that she had been released.[4] *Id.* She did not indicate to Ms. Hacker whether she had obtained substance abuse treatment after her release. *Id.* at 35, 55.[5]

---

[3] Mother testified that she was incarcerated from August 2018 until November 2018, except for one point during which she was "out for like literally two days and they put me back in jail[.]" N.T., 12/9/19, at 120-23.

[4] CYS presented criminal docket sheets showing that Mother still had pending criminal charges. N.T., 12/9/19, at 49-50; Exhibits CYS-8, 9, 10, 11, and 12.

[5] Notably, Mother was diagnosed with paranoid schizophrenia while she was incarcerated. N.T., 12/9/19, at 99. It is not entirely clear from the record whether this occurred during her 2018 incarceration or during an incarceration prior to the Children's adjudication of dependency. *See id.* at 75, 99, 102-03. Mother was prescribed medication but stopped taking it after her release, without approval from a medical professional, because she claimed it was making her condition worsen. *Id.* at 126-27. According to Ms. Hacker, Mother was again taking medication during her incarceration from February 2019 until November 2019. *Id.* at 30-31.

Mother's own testimony confirmed that her history of substance abuse remained unaddressed. Regarding her most recent treatment, she testified that she attended a rehabilitation program in August 2018 for seven days before leaving. *Id.* at 105. When asked why she left the program after only seven days, Mother replied, "I don't really know." *Id.* She explained that she had an appointment for additional treatment that same month, but that she was unable to attend because she was incarcerated. *Id.* at 106. After her release, Mother sought to enroll in medication-assisted treatment. *Id.* at 112. However, she explained that she was unable to participate in treatment because she could not remain clean for forty-eight hours at a time, which was a prerequisite for obtaining a prescription for Suboxone. *Id.* at 112, 127, 131. Mother's incarceration in February 2019 began one or two weeks after her failed attempt to participate in medication–assisted treatment. *Id.* at 113, 131. Mother stated that she attended Narcotics Anonymous and/or Alcoholics Anonymous meetings during her periods of incarceration and that she began attending "sober recovery" meetings at a church following her release. *Id.* at 107-09. She also stated that she had scheduled an appointment for outpatient treatment for the week after the termination hearing. *Id.* at 113-14.

In addition, the record demonstrates that Mother lacked stable housing throughout the Children's dependency. Ms. Hacker testified that Mother and Father were evicted from their initial housing in April or May 2018, and that they began living in a hotel and in their car. *Id.* at 32-33. They then lived

with family members in June or July 2018.  *Id.* at 33.  Mother and Father apparently ended their relationship, and Mother reported that she was living with a new boyfriend in September 2018.  *Id.* at 34.  However, Mother and Father were back together and moving into a trailer by January 2019.  *Id.* After Mother's incarceration in February 2019 and release in approximately November 2019, she reported that she was living with her grandmother.  *Id.* at 28-29, 35.

In light of this evidence, it is clear that Mother is incapable of parenting the Children, and that she cannot or will not remedy her parental incapacity. The Children entered foster care in April 2018.  By the time of the termination hearing in December 2019, they had remained in foster care for over a year and a half.  During the Children's placement, Mother made little if any progress toward addressing her history of substance abuse, obtaining stable housing, and otherwise placing herself in the position to provide them with appropriate parental care.  Most significantly, Mother continued to abuse substances up until her incarceration in February 2019.  Mother admitted that she was unable to stay clean for even forty-eight hours at a time prior to her incarceration. She was released approximately a month before the hearing and it remained doubtful whether she would be able to maintain her newfound sobriety when not in jail.  The Children's lives cannot remain on hold indefinitely when Mother has shown no prospect of improvement.  *See In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006) ("[A] child's life cannot be held in abeyance

while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future."). Therefore, we affirm the decision of the orphans' court to terminate Mother's parental rights pursuant to Section 2511(a)(2).

In reaching this conclusion, we reject Mother's claim that the orphans' court relied impermissibly on her pending criminal charges when reaching its decision. Our review of the record does not indicate that the court placed any weight on Mother's charges. The court's opinion does not mention Mother's criminal history, other than to note that she had been incarcerated twice. As explained above, incarceration is a relevant factor, and may be determinative, when deciding whether to terminate parental rights. *A.D.*, 93 A.3d at 897. In addition, counsel for CYS asked Mother during the hearing what her plan for the Children would be if she were convicted of the charges. N.T., 12/9/19, at 132. Counsel for Mother objected and the court sustained the objection on the basis that the question was speculative. *Id.* The only indication that the court may have considered the charges was its statement that it was "kind of bother[ed]" by the fact that Mother "start[ed] using and getting involved in significant criminal activity after she ha[d] three kids." N.T., 12/9/19, at 165. However, Mother herself admitted that she engaged in criminal conduct after the Children's birth by abusing substances. *Id.* at 112, 127, 131. The court's

description of Mother's conduct was accurate and we see no basis upon which to disturb its decision.

We next consider whether the orphans' court abused its discretion by terminating her parental rights to the Children pursuant to Section 2511(b). The requisite analysis is as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the [S]ection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted).

Mother addresses Section 2511(b) only briefly on appeal. Nonetheless, we conclude that she has preserved a challenge to Section 2511(b) for our review. Mother contends that CYS presented insufficient evidence regarding

the Children's needs and welfare because there was no testimony that she was detrimental to the Children, or that preserving her parental rights would be harmful to them. Mother's Brief at 18-19.

The orphans' court explained its decision to terminate Mother's parental rights pursuant to Section 2511(b) as follows:

> These children are at a tipping point in their lives. The major consideration in this case is their best interest. This court is unwilling to gamble that miraculously these parents will be in a position to provide a home and adequate support and nurture for these children in the foreseeable future. To uproot them from a stable environment in their formative years is an unwise gamble with precious lives. To postpone a decision while the parents have no plans to establish a nurturing, supportive home for the [C]hildren is equally unwise. After almost two years of placement and five years of concerns and supervision by [CYS], the odds of a stable home for these children with Mother and Father are slim.
>
> ***
>
> . . . . Not only have Father and Mother failed to perform parental duties for the [C]hildren since April 9, 2018, there is no indication that they will be able to do so in the near future. It is not in the best interest of the [C]hildren to deny them permanency, stability, comfort, and hope. These children are now thriving and need continued stability and permanency.

Orphans' Court Opinion, 2/25/20, at 9-12.[6]

_____

[6] The orphans' court conducted an *in camera* interview of Z.R. 1 during the termination hearing. Z.R. 1 stated that he wanted to stay at his foster home. N.T., 12/9/19, at 21-23. However, the court found that Z.R. 1 "certainly didn't have the maturity to reasonably articulate what he wanted to do or not do and reasons for it and all that sort of thing. He just seems to be kind of content with life, from what I could see." *Id.* at 25. The court agreed with the opinion of the Children's guardian *ad litem*, who asserted that Z.R. 1 and his siblings were unable to offer their positions on the termination of Mother's rights. *Id.*

While it was appropriate for the orphans' court to consider the Children's need for stability and permanency, and while the record supports the court's findings in this regard, we are constrained to conclude that the court's analysis was incomplete. As explained above, a court may not terminate parental rights pursuant to Section 2511(b) without considering whether an emotional bond exists between the relevant parent and child, and what harm, if any, will befall the child if the court severs that bond. ***See C.D.R.***, 111 A.3d at 1219; ***see also In re Adoption of J.N.M.***, 177 A.3d 937, 944 (Pa. Super. 2018), *appeal denied*, 183 A.3d 979 (Pa. 2018) (quoting ***In re E.M.***, 620 A.2d 481, 484-85 (Pa. 1993)) ("When examining the effect upon a child of severing a bond, courts must examine whether termination of parental rights will destroy

_____

at 3-4, 25. At the conclusion of the hearing, the court stated the following regarding the interview:

> In the meantime, we talk about poor [Z.R. 1] back there, and he's a nice young man who couldn't express his opinion about a whole lot of things except I got this out of him . . . that he was happy and comfortable where he was. I mean, he didn't say anything negative about his parents or anything, but he was happy and comfortable where he was. . . .

> And I suspect the other children are probably similar but maybe not on his level, but they all have great possibilities of having a happy life ahead of them, a productive life ahead of them, and they're doing pretty well and cared for [*sic*] right now. I hate to be the one that rolls the dice and say[s], well, let's put them on hold for awhile [*sic*] and then do more damage 'cause there's been damage done already . . . .

***Id.*** at 166.

a 'necessary and beneficial relationship,' thereby causing a child to suffer 'extreme emotional consequences.'").

In the matter at bar, the orphans' court addressed Mother's relationship with the Children in only a single sentence in its opinion, which appeared as part of its Section 2511(a) analysis. As quoted above, the court stated that Mother's "status is more of an older sister or relative who likes the [C]hildren but does not or cannot provide support and nurture of the most basic kind." Orphans' Court Opinion, 2/25/20, at 9. The court did not make clear whether it believed that the Children share a bond with Mother or whether terminating her rights would have negative emotional consequences for the Children.

Moreover, to extent the orphans' court found that the Children do not share a bond with Mother, and that terminating Mother's rights would not have negative emotional consequences for the Children, the court's findings lack record support. CYS presented little if any evidence addressing the Children's relationship with Mother. Our review of the record has not uncovered any testimony regarding this issue, other than Ms. Hacker's statement that Mother is "appropriate" during her visits with the Children "and can generally run after each child when they're all going in different directions." N.T., 12/9/19, at 74. CYS also presented Exhibit CYS-18, which details Mother's attendance at visits. The exhibit indicates that Mother participated in visits with the Children consistently, even visiting while incarcerated. In total, Mother participated in thirty-nine of forty-eight scheduled visits during the Children's dependency.

- 16 -

Thus, because the court terminated Mother's parental rights to the Children without conducting a complete Section 2511(b) analysis, and because the court lacked the evidence needed to conduct a complete analysis, we conclude that we must vacate the portion of the court's decrees terminating Mother's rights as to Section 2511(b) and remand for further proceedings. **See E.M.**, 620 A.2d at 485 (remanding "for a reevaluation of the needs and welfare of the children, taking into account whatever bonds may currently exist between the children and appellant, as well as other factors having bearing upon whether termination is proper."); **see also In re Adoption of A.C.H.**, 803 A.2d 224, 230 (Pa. Super. 2002) (remanding "to give the parties an opportunity to present further testimony regarding the emotional bonds between mother and daughter, and the effect a termination of parental rights would have on A.C.H.").

Based on the foregoing analysis, we affirm the portion of the December 10, 2019 decrees terminating Mother's rights pursuant to Section 2511(a) but vacate the portion of the decrees terminating Mother's rights pursuant to Section 2511(b) and remand. On remand, the orphans' court must conduct an additional hearing as soon as possible, in order to receive and consider evidence regarding the Children's relationship with Mother, after which it must enter new decrees granting or denying termination of her rights pursuant to Section 2511(b).

Decrees affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/05/2020